NO. 07-10-00184-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JANUARY
25, 2011

 



 

IN THE INTEREST OF D.S., N.S., CHILDREN



 



 

 FROM THE 106TH DISTRICT COURT OF GARZA
COUNTY;

 

NO. 05-11-06063-CV; HONORABLE KEVIN C. HART, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

On October 29, 2009, appellee, the Texas Department of Family and Protective
Services, filed a petition seeking termination of the parental rights of the
biological parents of D.S. and N.S.[1]  

This was not the first such petition
the department filed with respect to the parents’ rights to the children.  In November 2005, the department filed a
petition which, as amended, sought relief including termination.  Proceedings under that petition culminated in
a final order signed in September 2007, appointing the department permanent
managing conservator of the children and the parents
possessory conservators. 

The October 2009 petition was heard
on March 11, 2010, after which the trial court rendered an order terminating
both parents’ parental rights and continuing the department’s role as permanent
managing conservator of the children.[2]  The father appeals, arguing through four
issues the evidence was insufficient to support findings that termination was
in the best interest of the children, he received ineffective assistance of
counsel at trial, his appearance by telephone at trial did not constitute
meaningful participation, and the evidence was insufficient to support findings
on two predicate grounds for termination. 
We will affirm.

Background

The department’s
involvement with the father and mother dates to February 2005 when it received
a report of “neglectful supervision” of D.S., N.S., and three other children. 
According to the department, the father and mother allowed drug users in
their home and were themselves involved in drug use, testing positive for
methamphetamine. In August 2005, the father was arrested and charged with
possession of methamphetamine with intent to deliver. Under a plea bargain
agreement, he was sentenced to ten years confinement in prison.  He remained incarcerated at the time of
trial, having four times been denied parole. 
According to the department, the parents did not make progress complying
with a service plan. 

The department obtained temporary
managing conservatorship of D.S. and N.S. in December 2005.  The children were placed with relatives of
the father from December 2005 until September 2006.  They were removed, according to the
department, because of bruising from inappropriate spankings.  Three placements followed, the last with
foster parents M.H. and G.H., where the children remained at the time of
trial.  At the hearing, the foster mother
testified generally of the wellbeing of the children in her home.  Both children were on a regimen of medications
for treatment of ADHD.  The foster
parents sought adoption of the children and entered an open adoption agreement
with the mother on September 21, 2009. 
According to a caseworker, the children wanted to be adopted.  Notes from D.S. and N.S. to the court
requesting adoption were received in evidence. 
If the court terminated parental rights, the department’s expressed plan
at the hearing was to transfer the case for adoption of the children by the
foster parents.  Should this plan fail,
the department viewed the children as “very adoptable.”  The department contacted a relative of the
father regarding possible placement for the children but, according to the
caseworker, the relative was caring for her mother and lacked the resources or
time to care for two children.

At the time of trial, D.S. was age
eight and N.S. age six.  Almost five
years had passed since their last personal contact with their father.  He had been incarcerated eleven of the
preceding seventeen years.  The
department indicated that while incarcerated the father wrote D.S. and N.S. six
letters and submitted approximately fifteen letters to the caseworker.  The father disputed the number of letters
sent the children, believing the total about fifteen.  In an order signed July 9, 2007, the parental
rights of the father to another child were terminated.  As predicate grounds for the termination, the
court found the father committed acts listed in paragraphs (E), (F), (N), and
(Q) of § 161.001.  According to the
caseworker, while incarcerated the father was able to perform the requirements
of the service plan available in prison. 
Particularly, he completed “a FAME packet and a parenting packet,” a
“drug class,” and a “parenting seminar.” 
The caseworker testified the father did not demonstrate a stable work
history or provide stable family housing. 
The father testified he expected to be paroled to the home of his mother
in Lubbock in November 2010.  He added
that his choice of two job prospects awaited.  According to the father, his mother is
“mentally disabled” and unable to care for the children.  Also her home is not large enough for the
children.  The father explained he needs
time, “two or three months,” to begin work and find a home.  He acknowledged a time of adjustment would be
required for him to reunite with the children.

Analysis

Sufficiency of the Evidence
Supporting Best Interest Finding

Through his fourth issue, the father
challenges the legal and factual sufficiency of the evidence supporting the
trial court’s finding that termination of the parent-child relationship was in
the best interest of the children.  

When reviewing factual findings
required to be made by clear and convincing evidence, we apply a standard of
review that reflects this burden of proof. 
In re S.M.L.,
171 S.W.3d 472, 476 (Tex.App.--Houston [14th Dist.]
2005, no pet.).  A legal
sufficiency review requires we consider all of the evidence in the light most
favorable to the finding to determine whether a reasonable fact finder could
have formed a firm belief or conviction that the finding was true.  Id., (citing In re J.F.C.,
96 S.W.3d at 266). In doing so, we assume the fact finder resolved
disputed facts in favor of the finding if a reasonable fact finder could do so,
and we disregard all evidence that a reasonable fact finder could have
disbelieved or found to have been incredible. 
Id.  However, because of the heightened standard,
we must also be mindful of any undisputed evidence contrary to the finding and
consider that evidence in our analysis. In
re J.F.C., 96 S.W.3d at 266 (“Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence”).

A factual sufficiency review, in a
proceeding to terminate the parent-child relationship, requires consideration
of the entire record to determine whether a factfinder
could reasonably form a firm belief or conviction that the finding was
true.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002). “‘If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not credit in favor of
the finding is so significant that a factfinder could
not reasonably form a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient.’” 
In re H.R.M., 209 S.W.3d 105,
108 (Tex. 2006) (quoting In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002)).  There
is a strong presumption that keeping a child with a parent is in the best
interest of the child.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006). It is also presumed that prompt and permanent
placement of the child in a safe environment is in the best interest of the
child.  Tex. Fam. Code
Ann. § 263.307(a) (West 2008). 

The Supreme Court of Texas has
identified factors for consideration by the trier of
fact in determining whether termination is in the best interest of a child,
including: the desires of the child; the emotional and physical needs of the
child now and in the future; the emotional and physical danger to the child now
and in the future; the parental abilities of the individuals seeking custody;
the programs available to assist these individuals to promote the best interest
of the child; the plans for the child by these individuals or by the agency
seeking custody; the stability of the home or proposed placement; the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not proper; and any excuse for the acts or omissions of the
parent.  Holley v. Adams, 544 S.W.2d 367, 372
(Tex. 1976).  However, these considerations are not exhaustive nor is proof of each
a condition precedent to termination of the parent-child relationship. In re C.H., 89 S.W.3d at
27.  The absence of evidence of
some of the Holley considerations
does not preclude the factfinder from reasonably
forming a strong conviction or belief that termination is in the child’s best
interest, particularly in the face of undisputed evidence that the parental
relationship endangered the safety of the child. Id.  The best interest
analysis evaluates the best interest of the child, not the parent.  In re S.A.P., 169 S.W.3d 685, 707 (Tex.App.--Waco
2005, no pet.).

The evidence supporting the statutory
grounds for termination may also be used to support a finding that the best
interest of the children warrants termination of the parent-child
relationship.  In re C.H., 89 S.W.3d at 28; In re P.E.W., 105 S.W.3d 771, 779 (Tex.App.--Amarillo 2003, no pet.).  And a best-interest analysis may consider
circumstantial evidence, subjective factors, and the totality of the evidence
as well as the direct evidence.  In re S.H.A., 728 S.W.2d
73, 86-87 (Tex.App.--Dallas 1987, writ ref’d n.r.e.).  A trier of fact may
measure a parent’s future conduct by his or her past conduct and determine that
it is in the child’s best interest to terminate parental rights.  In re D.L.N., 958 S.W.2d 934, 941 (Tex.App.--Waco
1997, pet. denied), overruled on other
grounds by In re C.H., 89 S.W.3d at 26. 

            The
department’s evidence showed the father had not provided the children with a
stable home environment.  Indeed, at the
time of the March 2010 final hearing, he had been incarcerated eleven of the
previous seventeen years. He was continuously jailed or in prison, for
methamphetamine possession, since 2005. 
And D.S. and N.S. had not seen him since his arrest in 2005.  The mother’s parental rights were
terminated.  The father’s parental rights
to another child were terminated in 2007 on multiple predicate grounds.  He anticipated release on parole or a release
date before completion of his ten-year sentence, but he thus far was denied
parole.  The only living arrangement for
the father on release was his mother’s home. 
But her disability and the size of her house meant the children would
remain in placement, even after the father’s release, until he was able to
provide suitable quarters.  He had no
other family placement options.  While in
prison, the father wrote the children and completed the portions of the service
plan performable in prison.  Since 2005
the children occupied multiple placements. They were removed from the first
placement after receiving punishment that produced bruises.  At the time of trial, D.S. and N.S. had lived
two years in the home of their foster parents. 
The children performed satisfactorily in school but required medications
for treatment of ADHD.  The foster
parents made an open adoption agreement with the mother and sought adoption if
the father’s parental rights were terminated. 
The children wished to be adopted.  


Considering all the evidence in
relation to the best interest factors in the light most favorable to the
court’s finding, we conclude a reasonable trier of
fact could have formed a firm belief or conviction that termination was in the
best interest of D.S. and N.S.  Moreover,
viewing all the evidence in a neutral light, we conclude that the disputed and
undisputed evidence favoring and disfavoring the finding permits a reasonable fact­finder to form a firm belief or conviction that
termination was in the best interest of D.S. and N.S.  Hence, the evidence supporting the court’s
finding that termination of the father’s parental rights was in the best
interest of D.S. and N.S. is legally and factually sufficient.  See
Holley, 544 S.W.2d 367; In re
S.M.L.D., 150 S.W.3d 754, 756 (Tex.App.--Amarillo
2004, no pet.).  We overrule his fourth
issue.

Ineffective Assistance of Trial
Counsel 

            By
his first issue, the father argues he received ineffective assistance of
counsel at trial.  As noted, in 2005 the
department initiated a suit affecting the father’s parent-child relationship
with D.S. and N.S.  In an amended
petition filed March 8, 2007, the department, among other things, sought
termination of the parent-child relationship. 
The pleading alleged such a result was in the best interest of the
children and supported the allegation for termination with four predicate
grounds under § 161.001(1).  The suit
resulted in an order signed September 15, 2007. 
The father’s parental rights to the children were not terminated;
rather, the order appointed the department permanent managing conservator of
the children and the father possessory conservator.  

According to the father, his counsel
at the March 2010 hearing should have interposed res judicata
as a bar to litigating issues tried in the April 2007 termination
proceeding.  Because trial counsel did
not raise the defense, and even elicited testimony of matters predating April
27, 2007, his representation was ineffective, the father argues.

The Family Code requires appointment
of counsel for representation of an indigent parent who opposes the termination
of his parental rights.  Tex. Fam. Code Ann.
§ 107.013(a)(1) (West 2008).  The standard for reviewing the effectiveness
of appointed counsel’s representation is that set forth by the United States
Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984).  See In re M.S., 115 S.W.3d 534, 545 (Tex. 2003); In re J.O.A., 262 S.W.3d 7, 18 (Tex.App.--Amarillo 2008), aff’d as modified and remanded, 283 S.W.3d 336 (Tex. 2009). The Strickland standard requires the
complaining party to establish: (1) counsel’s performance was deficient, and
(2) the deficient performance prejudiced the complaining party.  Strickland,
466 U.S. at 687; In re M.S., 115 S.W.3d at 545; In re
J.O.A., 262 S.W.3d at
18.  An attorney’s performance is
deficient if it falls below an objective standard of reasonableness.  Strickland,
466 U.S. at 688.  Deficient performance
is prejudicial when, but for the attorney’s unprofessional conduct, there is a
reasonable probability that the outcome of the proceeding would have been
different.  Id. at 694.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id.


The provisions of Family Code §
161.004 bear on the father’s contention. 
That section provides:

(a) The court may terminate the parent-child relationship after rendition
of an order that previously denied termination of the parent-child relationship
if: 

(1) the petition under this section is filed
after the date the order denying termination was rendered;

(2) the circumstances of the child, parent, sole managing conservator,
possessory conservator, or other party affected by the order denying
termination have materially and substantially changed since the date that the
order was rendered;

(3) the parent committed an act listed under
Section 161.001 before the date the order denying termination was rendered; and

(4) termination is in the best interest of the
child. 

(b) At a hearing under this section, the court may consider evidence
presented at a previous hearing in a suit for termination of the parent-child
relationship of the parent with respect to the same child.

Tex. Fam. Code Ann. § 161.004(a),(b) (West 2008).   

Here, § 161.004 has application
because: (1) the department filed its live petition for termination of the
parent-child relationship on October 29, 2009, a date after rendition of the
order denying termination; (2) the circumstances of D.S. and N.S. and the
mother materially and substantially changed on September 21, 2009, when the
mother signed an open adoption agreement and an affidavit voluntarily
relinquishing parental rights to D.S. and N.S.; (3) on July 9, 2007, the
parent-child relationship of the father and another child was terminated based
on a finding that his conduct violated § 161.001(1)(E); and, (4) as noted
above, the evidence supported a finding termination was in the best interest of
D.S. and N.S.  

Section 161.004(b) allowed the trial
court to consider evidence at the second hearing presented in favor of
termination at the previous hearing.  See In re M.F., No. 11-08-0276-CV, 2010
Tex. App. Lexis 3676, at *4 (Tex.App.--Eastland May
13, 2010, no pet.) (mem.
op.) (reasoning despite claim of res judicata § 161.004 permits trial court to consider evidence
of conduct preceding previous order denying termination).  Thus, counsel for the father was not required
to challenge the admissibility of evidence at the 2010 hearing on the ground it
existed at the time of the 2007 hearing. 
With the authorization granted by § 161.004(b), such an objection would
have lacked merit. 

Additionally, the father does not
demonstrate how his counsel rendered ineffective assistance by adducing
evidence of events occurring before April 27, 2007.  In light of the function of § 161.004,
something beyond failure to present a res judicata
defense is necessary.  Otherwise, we
presume counsel’s decision to present the evidence
was reasonable.  See In re H.R.M., 209 S.W.3d 105, 111 (Tex. 2006) (for ineffective
assistance determination, court indulges in strong presumption of
reasonableness including possible strategic reason).  

We conclude the record before us does
not establish the performance of the father’s trial counsel was deficient.  His first issue is overruled. 

Meaningful Participation of the Father at Trial

Before the termination hearing, the
trial court denied the father’s request for a bench warrant authorizing his
live appearance at the hearing.  He was,
however, allowed to appear by telephone and was represented at the hearing by
appointed counsel.  

            Through
his statement of appellate points filed in the trial court and his second issue
on appeal, the father argues the trial court reversibly erred by denying his
request for a bench warrant and the opportunity to appear live at trial.  But this is not the issue the father argues
in his brief.  Rather, he complains his
telephonic appearance was not meaningful because of malfunctioning telephone
equipment, the occasional loss of the telephone connection, and interruptions
of the proceeding as the trial court verified the father’s presence on the
telephone line.  These facts, the father
argues without citation, mean he was denied meaningful participation in the
hearing.

            The
father’s presentation of his second issue is problematic.  First, preservation of error concerning
meaningful participation by telephone required the father to make a timely
objection specifying the grounds for the objection at the earliest opportunity
and obtain an adverse ruling from the trial court.  Tex. R. App. P. 33.1(a)(1).  Moreover, we may not consider an issue that
was not specifically presented to the trial court in a timely-filed statement
of points.  Tex. Fam.
Code Ann. § 263.405(i) (West 2008).  While the record documents random problems
with the telephone equipment or the quality of the call, it does not contain a
corresponding complaint by the father. 
And he did not identify this issue as a point for appeal in his
statement of points.  Second, an appellate
brief must “contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and the record.”  Tex. R. App. P. 38.1(i).  Failure
to cite supporting authority or advance a substantive analysis waives the issue
on appeal.  Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co., 106 S.W.3d 169, 173
(Tex.App.--Amarillo 2003, no pet.).  The father presents no authorities or
argument supporting his complaint that the trial court erred by denying his
request for a bench warrant.  

            But
even had the father briefed any claimed error arising from the trial court’s
denial of his request for a bench warrant or preserved error concerning the
quality of telephone equipment or service, the issue would lack merit. 

            An
inmate has no absolute right to appear in person for the trial of a civil case,
Armstrong v. Randle, 881 S.W.2d 53,
56-57 (Tex.App.--Texarkana 1994, writ denied), but he
may not be denied reasonable access to the courts.  A prisoner requesting a bench warrant must
justify the need for his presence;[3]
it is not the obligation of the trial court to go beyond the bench warrant
request and independently inquire of the necessity of the inmate’s live
appearance.  In re Z.L.T., 124 S.W.3d 163, 166 (Tex.
2003).  In bench warrant cases, if
a court determines a pro se inmate in
a civil suit may not appear personally, it may, however, allow the inmate to
appear by telephone, affidavit, or deposition. 
In re D.D.J.,
136 S.W.3d 305, 314 (Tex.App.--Fort Worth 2004, no
pet.).  Here, not only did the
father appear by telephone but he was represented by appointed counsel.  On this record, the trial court did not abuse
its discretion by denying the father’s request for a bench warrant.  See In re Z.L.T., 124 S.W.3d at 165 (order denying bench warrant
reviewed for abuse of discretion). 

            This
case was tried to the bench and the record indicates
throughout the proceeding the trial court was conscious of the father’s
participation by telephone.  At times
when the father said he was unable to hear, the court directed witnesses and counsel
to speak loudly.  At one point during
testimony the telephone connection was lost, briefly restored, and lost
again.  The court substituted telephones
and allowed the witness to be re-questioned. 
The father testified at length on direct and cross-examination.  There is no record indication his testimony
was hindered or otherwise limited by use of a telephone.  Throughout the hearing the father was freely
permitted to interrupt the proceeding if he had difficulty hearing or if a
problem with the telephone occurred.  The
court accommodated the father’s telephone-related complaints.  At the conclusion of evidence, the father
made no complaint of his participation by telephone or otherwise indicated he
was unable to participate in any portion of the hearing.

            “A
trial court’s inherent power includes broad discretion over the conduct of its
proceedings.” State ex rel. Rosenthal v.
Poe, 98 S.W.3d 194, 199 (Tex.Crim.App. 2003); see Tex. R. Evid.
611 (“[t]he court shall exercise reasonable control over the mode and order of
interrogating witnesses and presenting evidence so as to (1) make the
interrogation and presentation effective for the ascertainment of the truth,
(2) avoid needless consumption of time, and (3) protect witnesses from
harassment or undue embarrassment”). 
This record does not demonstrate the trial court abused its discretion
conducting the termination hearing with the father appearing by telephone.  The father’s second issue is overruled.

Sufficiency of the Evidence
Supporting Certain Predicate Grounds

By his third issue, the father
challenges the legal and factual sufficiency of the evidence supporting two of
the predicate grounds for termination found by the trial court.  

In its written termination order, the
trial court made findings supporting termination according to paragraphs (D),
(E), (M), (N), and (Q) of § 161.001(1). 
The father, however, challenges the sufficiency of the evidence
supporting termination under paragraphs (D) and (E) of § 161.001(1), and raises
no appellate complaint regarding the trial court’s findings under paragraphs
(M), (N), or (Q). “Only one predicate finding under section 161.001(1) is
necessary to support a judgment of termination.”  In re A.V. and J.V., 113 S.W.3d 355, 362 (Tex. 2003).  If multiple predicate grounds are found by
the trial court, we will affirm based on any one ground because only one is
necessary for termination of parental rights. 
In re S.N.,
272 S.W.3d 45, 49 (Tex.App.--Waco 2008, no pet.).
We are bound by the unchallenged findings supporting termination under
paragraphs (M), (N), and (Q).[4]  See
Perez v. Texas Dep’t of Protective & Regulatory Servs., 148 S.W.3d 427,
434 (Tex.App.--El Paso 2004, no pet.); In re L.M., 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  See
also In re A.C., No. 07-07-0354-CV, 2008 Tex. App. Lexis 2718, at *2 (Tex.App.--Amarillo April 16, 2008, no pet.) (mem. op.).  We therefore need not address the father’s
challenges of the sufficiency of the evidence supporting termination under
paragraphs (D) and (E). 

Additionally, the evidence at trial
included an order terminating the parent-child relationship of the father and
another child under § 161.001(1)(E). This fact also is
a predicate ground for termination, § 161.001(1)(M),
and the trial court included such a finding in its order.  The father suggests no basis for challenge of
this finding on appeal and we see no meritorious basis in the record.  Thus, regardless of the scope of the father’s
sufficiency complaint, at least one predicate ground supports termination of
the parent-child relationship between the father and D.S. and N.S.  We overrule his third issue.

 

 

 

Conclusion

            Having
overruled the father’s four issues on appeal, we affirm the judgment of the
trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 











[1] In September 2009, the mother made a joint adoption
agreement with the foster parents of D.S. and N.S. She also signed an affidavit
voluntarily relinquishing her parental rights to the children.  The court’s order terminated her parental
rights because of her voluntary relinquishment. 
She does not appeal the order.  We
identify the children by their initials and the parents as the father and
mother, pursuant to Rule of Appellate Procedure 9.8. Tex. R. App. P. 9.8.

 





[2] The court found termination in the best interest of
the children.  It also found father: (1)
knowingly placed or knowingly allowed the children to remain in conditions or
surroundings which endangered the physical or emotional well-being of the
children; (2) engaged in conduct or knowingly placed the children with persons
who engaged in conduct which endangered the physical or emotional well-being of
the children; (3) had his parent-child relationship terminated with respect to
another child based on a finding that father’s conduct violated Family Code §
161.001(1)(D) or (E); (4) constructively abandoned the children; (5) knowingly
engaged in criminal conduct resulting in his conviction and confinement and
inability to care for the children for not less than two years from the date of
filing the petition. Tex. Fam. Code Ann. § 161.001(1)(D),(E),(M),(N),(Q)
(West Supp. 2010).





[3] In In re Z.L.T., the court noted:

Texas courts of appeals have recognized a variety of factors that trial
courts should consider when deciding whether to grant an inmate’s request for a
bench warrant. These factors include the cost and inconvenience of transporting
the prisoner to the courtroom; the security risk the prisoner presents to the
court and public; whether the prisoner’s claims are substantial; whether the
matter’s resolution can reasonably be delayed until the prisoner’s release;
whether the prisoner can and will offer admissible, noncumulative testimony
that, cannot be effectively presented by deposition, telephone, or some other
means; whether the prisoner’s presence is important in judging his demeanor and
credibility; whether the trial is to the court or a jury; and the prisoner’s
probability of success on the merits. 

124 S.W.3d 163, 165-66 (Tex. 2003). 
In its order denying the requested bench warrant, the trial court
considered these factors as well as whether the father was represented by
counsel.  

 





[4] Flowers
v. Texas Dep’t of Human Resources, Tarrant County Welfare Unit, 629 S.W.2d
891, 893 (Tex.App.--Fort Worth 1982, no writ).