Oscar Lee GRAGG, Appellant,

v.

## CAYUGA INDEPENDENT SCHOOL DISTRICT, Appellee.

### No. 820.

Court of Civil Appeals of Texas, Tyler.

June 5, 1975.

Rehearing Denied June 26, 1975.

---

Billy H. Gragg, Bob R. Reeves, Palestine, for appellant.

James E. Pritchard, Fort Worth, and Elvin E. Tackett, Bedford, for appellee.

MOORE, Justice.

This is a delinquent tax suit. Appellee, Cayuga Independent School District, instituted suit against appellant, O. L. Gragg, for the recovery of certain delinquent ad valorem taxes alleged to be due by appellant for the years of 1971, 1972 and 1973, and to foreclose a tax lien on land owned by appellant lying within the school district. Appellant answered with a general denial and affirmatively alleged by way of a defense that no taxes were due because the method used by the school district in assessing the land for taxes was in violation of Article 8, Sec. 1–d [1] of the Texas Constitution, Vernon's Ann.St., which requires that land designated for agricultural use must be assessed for tax purposes on the basis of only those factors relative to agricultural use.[2] After a trial before the court sitting without a jury, the trial court entered judgment for the school district for taxes, penalty and interest in the amount of $30,686.16 and for foreclosure of the tax lien. From such judgment, appellant, O. L. Gragg, perfected this appeal.

We affirm the judgment rendered by the trial court.

The trial court filed extensive findings of fact and conclusions of law. Among other things, the trial court found (1) that although appellant used the land for agricultural purposes, he failed to establish his eligibility for an agricultural use designation under the amendment in that his proof failed to show that his agricultural business constituted his primary occupation and source of income and (2) that appellant failed to prove that the plan or scheme employed by the district in fixing the value of his land worked to his substantial injury.

Appellant brings fifty-two points of error. Basically, he contends that the evidence conclusively established his eligibility to claim the benefit of the amendment, and based on this premise, he contends that the assessment and levy were void because the district adopted a fundamentally wrong method of taxation in that the school district valued his land on a basis other than

1. Hereinafter referred to as the "amendment."

2. The relevant parts of the Constitutional Amendment are as follows:

"Sec. 1–d. Assessment of lands designated for agricultural use

"Sec. 1–d. (a) All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use. 'Agricultural use' means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner.

"(b) For each assessment year the owner wishes to qualify his land under provision of this Section as designated for agricultural use he shall file with the local tax assessor a sworn statement in writing describing the use to which the land is devoted.

"(c) Upon receipt of the sworn statement in writing the local tax assessor shall determine whether or not such land qualifies for the designation as to agricultural use as defined herein and in the event it so qualifies he shall designate such land as being for agricultural use and assess the land accordingly.

"(d) Such local tax assessor may inspect the land and require such evidence of use and source of income as may be necessary or useful in determining whether or not the agricultural use provision of this article applies."

its value for agricultural use in violation of the constitutional mandate. We are not in accord with this proposition for two reasons.

First, in order for appellant to claim the benefits of the amendment, it was incumbent upon him to plead and prove that he properly brought himself within the requirements of the amendment. One of the essential requirements is that an applicant for an agricultural use designation must prove that his business venture in agriculture constitutes his primary occupation and source of income. Thus, the source of an applicant's income is of paramount importance. With regard to appellant's income, the trial court made findings of fact as to both the net and gross annual income received by appellant from his agricultural business as well as from other business and investments. For convenience, the findings are set forth in the following schedule[3]:

|  | 1970 | 1971 | 1972 |
|---|---|---|---|
| Gross Income from Agricultural Operations | $370,659.07 | $299,205.84 | $301,616.24 |
| Gross Income from Business Ventures, Occupations, and Investment of Capital Other than Agricultural Operations | 415,295.28 | 400,670.11 | 674,659.17 |
| Gross Income from All Sources | 788,719.05 | 703,003.17 | 980,856.31 |
| Net Income from Agricultural Operations | 131,357.14 | 79,397.67 | 109,188.64 |
| Net Income from Business Ventures, Occupations, and Investment of Capital, other than Agricultural Operations | 402,038.55 | 391,091.78 | 661,628.83 |
| Net Income from All Sources | 536,160.39 | 473,616.67 | 775,398.37 |

Appellant has no points of error challenging the accuracy of any of the findings showing appellant's income from the various sources indicated and therefore such findings are conclusive and binding on this Court. Curry v. E. E. Stone Lumber Co., 218 S.W.2d 293 (Tex.Civ.App., writ ref., n. r. e.); Cortez v. Cortez, 457 S.W.2d 131 (Tex. Civ.App., 1970, n. w. h.). In view of the foregoing findings, it becomes obvious that appellant's agricultural income did not constitute his primary source of income and this is true irrespective of whether his income is computed on the basis of net or gross income. We hold that the trial court did not err in finding that appellant did not discharge his burden of proving that he brought himself within the requirements of the amendment.

While appellant does not challenge the accuracy of the foregoing income schedule,

3. The parties agree that in determining eligibility for an agricultural use designation for 1971, 1972 and 1973, appellant's income for each preceding year is controlling.

he maintains that the trial court erred in including certain items of income in calculating his total business income. He argues that only such income which he received from a business venture for profit is to be compared with agricultural income in determining his eligibility. He takes the position that the items of income listed below should not have been classified as business income and upon excluding these items, his agricultural income would then constitute his primary source of income thereby making him eligible for an agricultural use designation. The items of income which he claims should have been excluded are set forth in the following schedule:

|  | 1970 | 1971 | 1972 |
|---|---|---|---|
| Oil and Gas Working Interest Roy. | $ 5,888.59 | $ 5,103.98 | $ 4,367.76 |
| Sale of Corporate Stock | 111,430.85 | 62,288.21 | 301,258.03 |
| Dividends | 62,177.71 | 66,544.57 | 70,692.98 |
| Rent-Houston office building |  | 63,340.00 | 76,010.22 |
| Interest-Savings Account | 38,004.00 | 23,265.13 | 110,865.82 |
| Interest-Project Notes | 36,225.72 |  |  |
| TOTAL | $248,426.87 | $220,541.86 | $563,194.81 |

We are not in accord with appellant's contention that the foregoing items should have been excluded from his non-agricultural income. In determining whether agricultural income constitutes the primary source of income, other income from business ventures, occupations and investments must be considered. San Marcos Consolidated Ind. School Dist. v. Nance, 495 S.W.2d 335 (Tex.Civ.App., 1973, writ ref'd, n. r. e.). In the instant case, there is nothing in the evidence showing that the above listed items of income were received by appellant as anything other than income from business ventures, occupations or investments of capital. The record reflects that appellant has been in the oil business for over forty years; he is a partner in two oil companies, Carter-Gragg Oil Company and Gragg Drilling Company; he has a considerable income from oil and gas producing properties located in a number of States; he has rental income from an office building in Houston; he received considerable income from invested capital such as profit on the purchase and sale of stock, and he receives dividends from stocks as well as interest on invested capital. He purchased the farm land in question in 1946. In view of the fact that appellant actively engaged in the oil business and actively engaged in the business of making investments, we think the trial court properly included the foregoing items in arriving at appellant's income from non-agricultural sources.

Second, even if appellant had established his eligibility to an agricultural use designation, it does not necessarily follow that he would be entitled to a judgment voiding the assessment merely because the school district failed to assess his land in accordance with the constitutional mandate. There must be more than the adoption of a fundamentally wrong principle or method of taxation. When the attack is made because the taxing authority followed an arbitrary plan or scheme of fixing values, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one, but also that the use of the plan

worked to his substantial injury. Druesdow v. Baker, 229 S.W. 493, 495 (Tex.Com.App., 1921); Rowland v. City of Tyler, 5 S.W.2d 756, 760 (Tex.Com.App., 1928); Lubbock Hotel Co. v. Lubbock Independent School Dist., 85 S.W.2d 776 (Tex.Civ.App., Amarillo, 1935, no writ); State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 573 (1954); City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954); Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955); Stein v. Lewisville Independent School Dist., 481 S.W.2d 436 (Tex.Civ.App., Ft. Worth, 1972, writ ref., n. r. e.). In Bass v. Aransas County Independent School District, 389 S.W.2d 165, 170 (Tex.Civ.App., Corpus Christi, 1965, writ ref., n. r. e.), the rule is stated thusly:

"The rule has been definitely established in Texas that where an aggrieved taxpayer fails to avail himself of the affirmative remedies of injunction and mandamus to prevent a taxing authority from putting an invalid and arbitrary plan of taxation into effect, but waits until suit is brought against him for delinquent taxes, his right to relief is limited. Once such a plan is put into effect, in the absence of a showing, by comparison of the assessments against his property with assessments against other like property, of a gross discrimination against him, the land owner may defeat recovery of taxes only to the extent that they are excessive, and he must assume the burden of proving excessiveness. He must show that the use of such a plan worked to his substantial injury, and the extent of such injury.  *  *  * "

In the City of Orange v. Levingston Shipbuilding Co., 258 F.2d 240 (5th Cir. 1958), the Court said:

"No matter how much it (the tax plan) violates the State Constitutional pattern, the only relief of a taxpayer defending a delinquent tax suit is to show in dollars that he is worse off."

■ Upon the trial of the case at bar, the school district introduced into evidence the delinquent tax records for the years 1971, 1972 and 1973. The tax assessor identified the records and testified that the taxes had not been paid. This evidence made a prima facie case as to every material fact necessary to the establishment of appellee's cause of action to recover delinquent taxes. Article 7326 and Article 7328, Vernon's Annotated Tex.Civ.Stat.; Alamo Barge Lines, Inc. v. City of Houston, 453 S.W.2d 132 (Tex.Sup.1970); B. M. Jamison v. City of Pearland, 489 S.W.2d 636 (Tex. Civ.App., Houston, 1st Dist., 1972, writ ref'd., n. r. e.). Once a taxing authority establishes a prima facie case, showing that taxes are delinquent, the burden then rests upon the taxpayer to go forward with proof which would meet the requirements of law for avoiding the assessment and levy. State v. Whittenburg, supra.

The record is devoid of any evidence showing that the taxes levied against appellant were either discriminatory or excessive. Appellant made no attempt to prove that the assessment and levy were discriminatory. His sole contention seems to be that the taxes are excessive because his land was assessed at a value in excess of the value at which it should have been assessed had it been assessed solely on factors relative to its agricultural use.

■ Appellant, however, failed to offer any proof of the value of his land based solely on its use for agricultural purposes. The only proof of the value of the land was the assessed value set by the tax assessor. For all the record shows, it may well be that the assessed value was actually lower than the market value of the land when valued on an agricultural use basis. In the absence of proof showing the assessment and levy to be excessive, it follows that appellant failed to discharge his burden of proving substantial injury.

■ Appellant argues that his proof was sufficient to show substantial injury. He takes the position that substantial injury was conclusively established by the testimony of Walter B. Brown, appellant's land-

man. We do not agree. Brown testified that after talking with landowners, he had "learned" that in other school districts where land was assessed as agricultural land, the taxpayer received "about" a "40% reduction" in his taxes. Such testimony is clearly hearsay and, as such, was without probative force. 24 Tex.Jur.2d, Evidence, Sec. 557, p. 51. At any rate, such testimony would not meet appellant's burden of proving that the assessed value was in excess of the market value of his land when valued on an agricultural use basis.

By other points of error, appellant contends that various findings of fact made by the Court are against the great weight and preponderance of the evidence. After a review of the entire record and after weighing all the evidence, both that in favor of, as well as that against the findings complained of, we are of the opinion that such findings are not against the great weight and preponderance of the evidence.

Other points, not discussed herein, have been considered and found to be without merit and are overruled.

The judgment of the trial court is affirmed.